Judge Mills
delivered the opinion.
On the trial of this suit, in tbe court below, (it being an action of ejectment,) after tbe plaintiff bad given in evidence a title derived from a patent to Thomas Corneal, and had proved that the defendant resided within the bounds of iheir title, the defendant gave in evidence an execution upon a decree in chancery for costs, m the same court, with its return by the sheriff, of a sale of tbe same premises by the sheriff, and a sheriff’s deed to tbe defendant, the execution being against tbe lessors of the plaintiff. Whereupon the court, at the instance of the plain *619 tiff’s counsel, instructed the jury that the sheriff’» salé and deed were void, and this forms the first question for the decision of this Court.
she’# selling lands under not^ 'thori* ^d to' seii more of a trfcft an ⅛⅛, if he does so’he aets without ⅛ sale'L*'1'* Void.
The apparent illegality in this sale is, that the etecu-* tion was for the sum of seventy four dollars, twenty-three cents and one half only, and the trect of land sold was four thousand aeres for the sum of three hundred and seventy dollars.
By the acts of assembly subjecting lands to the payment of debts, the sheriff is authorized to sell no more than will pay the debt and costs. As an apology for doing so the sheriff has stated that he first offered the land for salé by asking who Would pay off the amount of the execution for the least quantity of the land \ but on these terms he obtained no bid. He then exposed the whole tract to sale to the highest bidder, and it was cried off to the defendant at the sura stated. This apology does not shew that he did his duty in this respect. For the course he adopted was not the proper one. It was his duty to offer the tract to the highest bidder, and after the price offered amounted to the sum in the execution, then to have directed the bidders, to bid so much less in land, laid off at some place specified by the officer, leaving both, that sold and that unsold, in convenient form. It is not easy to conjecture that he would not have succeeded in this mode in selling less of the land for the sum due in the execution. This irregularity of the sheriff, however, wé do not conceive would affect the title of the purchaser, who, in this res* pect, appears to have had no agency over the matter. But altho’ a purchaser ought not to have his title impeached by irregularities of the officer, in which he has no con*ern, yet we conceive a purchaser is bound to look to the autho* ritj under which an officer acts, and if that fails in the officer, the purchaser can acquire no title. In the present case, neither the statute nor the execution authorized a sale of more than was sufficient to satisfy the execution, and an attempt todo so, is indubitably a void act, as to the excess sold beyond what is sufficient, and renders if impossible to see how much would have been sufficient to answer the purpose. Of course the whole sale was radically defective and the court below decided correctly in dé* fermining it void
It has however been contended, in argument, that this doctrine would be a departure from the course of decision *620 heretofore delivered in this court, by which sheriff’s sales have been supported in favor of the tille of the purchaser at such sales. It is true the policy of the law, as well as, justice to purchasers, require that such sales should not he impeached for slight irregularities.in the officer, not pro* cured to be done by the purchaser.
A clear dis-tin ion exists between an act done without authority, "nd an au bority inf ' tr.a' iv fXeicised.
But this is not a case of that kind. And the doctrine now advanced may be reconciled with the former decisions of this court, by attending to the distinction between a sale without authority, and one where there is an authority, not strictly pursued. In the former case no title will pass, while in the latter the purchaser wiil acquire a title, and the party injured by the erroneous acts of the officer in executing his authority, will be left to his remedy against the officer for mat injury. This case we conceive comes within the fiist class above described and therefore the sale cannot be sustained.
In the declaration of ejectment demises were laid, severally, in the names of several lessors, among which was ooe in the name of William May, and another in the name of James Coleman. After the court had instructed the jury that the plaintiff was entitled to recover, the sheriff’s sale notwithstanding, at the instance of the plaintiff’s, counsel, the counsel for ihe defendant demanded of the court to say on which demise the plaintiff was entitled to. recover. The court decided that the recovery ought to be bad on the demise of Coleman. To this opinion the defendant excepted and the jury found a verdict specially oa the demise of Coleman, and for the defendants on the other demises. This decision of the court is now assigned for error. Whether the defendant ean avail himself of this error, if it be one, procured on bis own requisition — or vvhether that part of the verdict ought or ought not to be regarded, which points out specially on which demise the recovery is had, when it is evident that the nominal plaintiff, who, tho’fictitious, must for some purposes be considered as real, be entitled to recover on some one of the demises of several lessors who have thought proper to join in the action, we have not thought it necessary now to decide. For we concur with the court below in the opinion that the recovery ought to be had on the demise of James Coleman.
Thomas Carnea), the patentee, in his lifetime, had conveyed the land in question, by mortgage, to William. *621 May, and tbe condition of that mortgage was forfeited by the non-payment of the money, it was intended to secúre. May had filed bis bill against tbe administrator and heirs of Carneal to foreclose tbe equity of redemption, and obtained a decree of foreclosure, and tbe appointment of commissioners to sell the estate rn the Fayette circuit court. While the decree stood in this situation, the commissioners not having acted, May sold the benefit thereof to James Coleman and executed to him an instrument of writing to this effect, written upon a copy of the decree of foreclosure attested by the clerk, to wit ;
The use nt’ “con- : is equi-law and the
mortgage, after a ^hThokts' the’legates-¾> the moi'iKapd ,
H'icklijfe for appellants, Hardin contra.
For and in consideration of tbe full amount specified in the foregoing decree, paid to me by James Coleman, in his individual capacity and not as administrator, 1 do hereby transfer, assign and convey to said James Coleman, in his own right, all my right, title, claim and interest, in the said decree, and ail my right and title in and to the mortgage and mortgaged property therein specified, and do hereby authorize the said James Coleman, in my name' and for me, to act in the premises as fully as 1 might or could do, if personally present, and to make use of my name in any legal manner that may be deemed necessary for the purpose of obtaining the amount of said decree,— Given under my band and seal this ninth dav of May, 1812.
WILLIAM MAY. [seal.]
Tbe expressions used in Ibis instrument, however inior» mal and summary, certainly includes the mortgaged tate, of which the tract in question is part, and the used, especially the term •‘convey,” we conceive is meaning and effect sufficient to answer the requisites of grant at common law and under our statute conveyances, and to carry with it the legal estate and it in the grantee. It has been contended, in argument, that this estate being then subject to the decree of the £ourt and under its directions to be sold, could no.t be the subject of sale.
Altbo’this was the fact, the legal title under the gage rested in May and not in the court or and we are not aware of any principle of law which pro-vented him from selling and conveying at that period well as at any other. We therefore conceive that there no error in the judgment of the court below, and that mus1 be affirmed wi»h costs.